METX, LLC, et al., Plaintiffs

v.

**WAL–MART STORES TEXAS, LLC, et al.**

No. 2:13CV547

United States District Court, E.D. Texas, Marshall Division.

Signed July 29, 2014

Tiffany L. Grant, William H. Chamblee, Chamblee, Ryan, Kershaw & Anderson, PC, Dallas, TX, for Plaintiffs.

Edward Lawrence Merritt, Harbour Smith Harris & Merritt, Longview, TX, Hugh Edward Hackney, Peter Samir Wahby, Greenberg Traurig, LLP, Dallas, TX, for Wal–Mart Stores Texas, LLC, et al.

## MEMORANDUM ORDER

MICHAEL H. SCHNEIDER,
UNITED STATES DISTRICT JUDGE

The above-entitled and numbered civil action was heretofore referred to United States Magistrate Judge Caroline M. Craven pursuant to 28 U.S.C. § 636. The Report of the Magistrate Judge which contains her proposed findings of fact and recommendations for the disposition of such action has been presented for consideration. Plaintiffs METX, LLC, Saleem Assaf, Roger Garcia, Scott Simpson, Debby Taylor, and Larry Taylor, on behalf of themselves and all other members of the proposed class ("Plaintiffs") filed objections to the June 13, 2014 Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The Court conducts a *de novo* review of the magistrate judge's findings and conclusions.

## I. BACKGROUND

Plaintiffs are licensed fitters and/or dispensers of hearing aid devices in the State of Texas. Plaintiffs have brought suit, on behalf of themselves and all other members of the class, against the Wal–Mart Defendants ("Defendants") for fitting and/or dispensing hearing instruments in their Texas stores in violation of Texas Occupation Code Chapter 402 and the Texas Administrative Code 22 § 141.16 (the "Texas Hearing Aid Statute"). *See* Am. Compl., ¶¶ 21–27.

On August 27, 2013, Defendants filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), primarily asserting federal law preempts the Texas Hearing Aid Statute. According to Defendants, the Food, Drug, and Cosmetic Act ("FDCA") and related Food and Drug Administration ("FDA") regulations expressly preempt state law requirements regarding medical devices that are "different from, or in addition to" federal requirements. *See* 21 U.S.C. § 360k(a). Defendants argue the Texas Hearing Aid Statute imposes such additional state law requirements and is thus preempted. Defendants further asserted Plaintiffs' claims for tortious interference and unjust enrichment should also be dismissed pursuant to FED. R. CIV. P. 12(b)(6).

In the June 13, 2014 Report and Recommendation, the magistrate judge recommended Defendants' motion to dismiss be granted in part and denied in part. Specifically, the magistrate judge recommended Plaintiffs' claims that Defendants violated the Texas Hearing Aid Statute be dismissed with prejudice, finding the hearing aid provisions contained within the Texas Administrative Code are expressly preempted by federal law. The Court further recommended Plaintiffs be ordered to amend their complaint with more details

as to their tortious interference and unjust enrichment based on fraud claims.

## II. OBJECTIONS TO REPORT AND RECOMMENDATION

Plaintiffs filed objections to magistrate judge's report, asserting she erred as follows: (1) determining that Texas Administrative Code § 141.16(a)(2) is preempted by federal law; (2) engaging in statutory construction and assuming restrictions that are not contained in the Texas Administrative Code; (3) assuming that even though not expressly required by the Texas Hearing Aid Statute, an audiological examination is required under the Texas Statute; and (4) relying on a 2007 Texas AG opinion which was based on a prior version of the Texas Administrative Code that did not contain a waiver provision. According to Plaintiffs, Texas' regulations are "substantially identical" to the federal regulations with regard to the sale of hearing aid devices and are not preempted. *See* 21 CFR § 808.1(d)(2).

## III. *DE NOVO* REVIEW

The magistrate judge's determination that the Texas regulations are preempted was based on three independent grounds, any one of which demonstrates the Texas statutory provisions are "different from and in addition to" the federal counterparts relating to the "safety and effectiveness" of hearing aids. First, the Texas regulations require a consumer to seek out a physician "duly licensed by the Texas Medical Board who specializes in diseases of the ear" to perform a medical evaluation, rather than merely a "licensed physician" as mandated by federal law. (Report and Recommendation at pg. 16). Second, the Texas medical evaluation waiver provision, which is made applicable to licensed "fitters and dispensers," is materially different from its federal counter-

part, which permits sales by a "hearing aid dispenser" who is not required to be licensed. *Id.* at pgs. 17–18. Third, the Texas licensure provisions that a "fitter and dispenser" must perform "fitting services" in the form of a non-waivable "audiological evaluation" are different from federal regulations that do not require any audiological exam. *Id.* at pg. 15.

The arguments raised by Plaintiffs in their objections were carefully considered and rejected by the magistrate judge in her 23–page Report and Recommendation. For the reasons outlined therein, the Court also finds the Texas regulations are not substantially identical to the federal regulations because they impose requirements applicable to a medical device that are different from and in addition to the federal requirements.

Plaintiffs' objections are without merit. The Court is of the opinion that the findings and conclusions of the magistrate judge are correct. Therefore, the Court hereby adopts the Report of the United States Magistrate Judge as the findings and conclusions of this Court. Accordingly, it is hereby

**ORDERED** that Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Dkt.No. 14) is hereby **GRANTED IN PART and DENIED IN PART.** It is further

**ORDERED** that Plaintiffs' claims that Defendants violated the Texas Hearing Aid Statute are dismissed with prejudice. It is further

**ORDERED** that Plaintiffs shall amend their complaint, within twenty days from the date of entry of this Order, with more details as to their tortious interference and unjust enrichment based on fraud claims. Plaintiffs shall also delete any preempted claims.

**It is SO ORDERED.**

## REPORT AND RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

CAROLINE M. CRAVEN, UNITED STATES MAGISTRATE JUDGE

The above-referenced cause of action was referred to the undersigned United States Magistrate Judge for pre-trial purposes in accordance with 28 U.S.C. § 636. The following motion is before the Court: Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Entry # 14). The Court, having reviewed the relevant briefing and hearing arguments of counsel May 15, 2014, recommends Defendants' motion to dismiss be **GRANTED IN PART and DENIED IN PART** as specified herein.

### I. FACTUAL BACKGROUND

Plaintiffs METX, LLC, Saleem Assaf, Roger Garcia, Scott Simpson, Debby Taylor, and Larry Taylor, on behalf of themselves and all other members of the class ("Plaintiffs") are licensed fitters and/or dispensers of hearing aid devices in the State of Texas. Plaintiffs have brought suit against the Wal–Mart Defendants ("Defendants") for fitting and/or dispensing hearing instruments in their Texas stores in violation of Texas Occupation Code Chapter 402 and the Texas Administrative Code 22 § 141.16 (the "Texas Hearing Aid Statute"). *See* Plaintiffs' Am. Compl., ¶¶ 21–27. Plaintiffs also assert claims for tortious interference and unjust enrichment, seeking the "disgorgement for all compensation received or earned from sales of hearing devices." *Id.* at ¶¶ 30–38.

### II. DEFENDANTS' MOTION TO DISMISS

Defendants assert Plaintiffs' complaint fails to state a claim upon which relief can be granted. Specifically, Defendants assert federal law preempts the Texas Hearing Aid Statute. According to Defendants, the Food, Drug, and Cosmetic Act ("FDCA") and related Food and Drug Administration ("FDA") regulations expressly preempt state law requirements regarding medical devices that are "different from, or in addition to" federal requirements. *See* 21 U.S.C. § 360k(a). Defendants argue the Texas Hearing Aid Statute imposes such additional state law requirements and is thus preempted.

Defendants assert Plaintiffs' claims for tortious interference and unjust enrichment should also be dismissed pursuant to FED. R. CIV. P. 12(b)(6) because Plaintiffs have failed to allege an "independent tort or unlawful act" or any facts to show there was a reasonable probability they would have entered into a business relationship with Defendants' customers or that Defendants' conduct was intentional. In addition, Defendants contend Plaintiffs' request for "competition" damages should be dismissed because mere competition is not actionable under Texas law. Finally, Defendants assert Plaintiffs' unjust enrichment claim is also improperly premised on the Texas Hearing Aid Statute's licensing requirement and fails as a matter of law as that statute is preempted.

In their response, Plaintiffs assert a state law is not preempted unless it conflicts with federal law. According to Plaintiffs, the Texas Hearing Aid Device regulations are not preempted because they are substantially identical to the federal regulations with regard to the sale of hearing aid devices. Plaintiffs further assert Congress has explicitly exempted the licensing and regulation of medical professionals from its regulation, granting the states the authority to regulate hearing aid fitters and dispensers. *See* 21 C.F.R. § 808.1(d)(3).

### III. RULE 12(b)(6) STANDARD

A pleading must contain a "short and plain statement of the claim showing

that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal,* 129 S.Ct. at 1950. "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Southern Christian Leadership Conference v. Supreme Ct.,* 252 F.3d 781, 786 (5th Cir.2001) (quoting *Fernandez–Montes v. Allied Pilots Ass'n,* 987 F.2d 278, 284 (5th Cir.1993)). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 129 S.Ct. at 1950.

## IV.   APPLICABLE LAW

### A.   Preemption, generally

██ Under the Supremacy Clause of the United States Constitution, the laws of the United States are "the supreme Law of the Land; any Thing in the Constitution or Laws of any State to the Contrary notwithstanding." U.S. CONST. art. VI, cl.2. A state law conflicting with federal law is "without effect." *Maryland v. Lou-*

*isiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). "Consideration of issues arising under the Supremacy Clause 'start[s] with the assumption that the historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress.' Accordingly, '[t]he purpose of Congress is the ultimate touchstone' of pre-emption analysis." *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) (citations omitted).

██ Congressional intent with respect to preemption may be express or implied. *See Hillsborough County, Fla. v. Automated Med. Labs., Inc.,* 471 U.S. 707, 713, 105 S.Ct. 2371, 85 L.Ed.2d 714 (1985). State law is expressly preempted when Congress uses clear preemptive language in the federal statute or regulation. *See id.* (recognizing state laws can be preempted by federal regulations as well as by federal legislation). Absent express preemptive language, a federal statute or regulation impliedly preempts state law when the language indicates a Congressional intent to exclusively and completely occupy a legislative field. *See Cipollone,* 505 U.S. at 516, 112 S.Ct. 2608.

### B.   The Medical Device Amendments of 1976

The Medical Device Amendments of 1976 ("MDA") were enacted in 1976 as an amendment to the FDCA of 1938.[1] In the MDA, which gives the FDA jurisdiction over medical devices, Congress preempted state laws that pertain to medical devices

---

1. The MDA classifies medical devices into three categories based on the potential risk to the public. 21 U.S.C. § 360c(a)(1)(A)–(C); *Medtronic, Inc. v. Lohr,* 518 U.S. 470, 476, 116 S.Ct. 2240, 135 L.Ed.2d 700 (1996). "Devices that present no unreasonable risk of illness or injury are designated Class I and are subject only to minimal regulation by

'general controls.'" *Lohr,* 518 U.S. at 476–77, 116 S.Ct. 2240 (citing 21 U.S.C. § 360c(a)(1)(A)). "Devices that are potentially more harmful are designated Class II" and must comply with a set of regulations coined "special controls." *Lohr,* 518 U.S. at 477, 116 S.Ct. 2240 (citing 21 U.S.C. § 360c(a)(1)(B)). Devices that present "a po-

intended for human use. The MDA contains a provision expressly addressing its preemptive scope:

> Except as provided in subsection (b) of this section, no State or political subdivision of a State may establish or continue in effect with respect to a device intended for human use any requirement—
> (1) which is *different from, or in addition to,* any requirement applicable under this chapter to the device, and
> (2) which relates to the safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under this chapter.

21 U.S.C. § 360k(a)(emphasis added).

A hearing aid is a "device" under the FDCA. *See* 21 U.S.C. § 321(h). As such, the FDA regulates the sale of hearing aids under the FDCA. *See* 27 U.S.C. §§ 331(a); 337(a). In this regard, the FDA has promulgated regulations governing the sales of hearing aids that impose requirements as to labeling, including who may purchase a hearing aid, conditions of any such sales, the provision of product and technical information, and the retention of certain records. *See* 21 C.F.R. §§ 801.420; 801.421.

The FDA has promulgated regulations to assist courts in interpreting § 360k(a), which state in part as follows:

> State or local requirements are preempted only when the Food and Drug Administration has established specific counterpart regulations or there are other specific requirements applicable to a particular device under the act, thereby making any existing divergent State or local requirements applicable to the device different from, or in addition to, the specific Food and Drug Administration requirements. There are other

State or local requirements that affect devices that are not preempted by section 521(a) of the act because they are not 'requirements applicable to a device' within the meaning of section 521(a) of the act.

21 C.F.R. § 808.1(d); *see also id.* at § 808.1(d)(1)–(10) (listing examples).

In response to the express preemption provision, Plaintiffs specifically rely on 21 C.F.R. § 808.1(d)(2) and (3), which provide as follows:

> (2) Section 521(a) does not preempt State or local requirements that are equal to, or substantially identical to, requirements imposed by or under the act.
> (3) Section 521(a) does not preempt State or local permits, licensing, registration, certification, or other requirements relating to the approval or sanction of the practice of medicine, dentistry, optometry, pharmacy, nursing, podiatry, or any other of the healing arts or allied medical sciences or related professions or occupations that administer, dispense, or sell devices. However, regulations issued under section 520(e) or (g) of the act may impose restrictions on the sale, distribution, or use of a device beyond those prescribed in State or local requirements. If there is a conflict between such restrictions and State or local requirements, the Federal regulations shall prevail.

21 C.F.R. § 808.1(d)(2) and (3).

## V. DISCUSSION

### A. Whether the Texas Hearing Aid Statute is preempted by federal law

The first issue before the Court is whether Plaintiffs' claims that Defendants

---

tential unreasonable risk of illness or injury" or which are "purported or represented to be for a use in supporting or sustaining human life or for a use which is of substantial impor-

tance in preventing impairment of human health" are designated Class III. 21 U.S.C. § 360c(a)(1)(C). The hearing aids at issue are Class I medical devices.

violate the Texas Hearing Aid Statute should be dismissed pursuant to Rule 12(b)(6) because the federal regulations expressly preempt the Texas Hearing Aid Statute and do not require, among other things, a license to "fit and dispense" hearing aids. As noted above, the MDA preempts state-imposed requirements that are different from, or in addition to requirements applicable to a device under federal law that relate to safety or effectiveness of the device or to any other matter included in a requirement applicable to the device under the chapter. 21 U.S.C.A. § 360k(a). The Court now considers the first prong of the preemption analysis, namely whether the Texas Hearing Aid Statute imposes requirements applicable to a device that are different from, or in addition to requirements imposed under the federal laws.

1. **Whether the Texas Hearing Aid Statute's requirements applicable to a device are in addition to, or different from the federal requirements**

    a. **Pertinent provisions in the federal regulations**

    In its hearing aid regulation adopted under the MDA, the FDA established "uniform professional and patient labeling requirements and conditions for sale of hearing aid devices." 42 Fed.Reg. 9286 (Feb. 15, 1977). Specifically, the federal regulations limit sales of hearing aids from dispensers to minors who received a medical evaluation from a physician within the six months period prior to the purchase and to adults who either similarly received a medical evaluation or waive the evaluation. The provision governing medical evaluations provides as follows:

    (1) General. Except as provided in paragraph (a)(2) of this section, a *hearing aid dispenser* shall not sell a hearing aid unless the prospective user has pre-sented to the hearing aid dispenser a written statement signed by a *licensed physician* that states that the patient's hearing loss has been medically evaluated and the patient may be considered a candidate for a hearing aid. The medical evaluation must have taken place within the preceding 6 months.

    (2) Waiver to the medical evaluation requirements. If the prospective hearing aid user is 18 years of age or older, the hearing aid dispenser may afford the prospective user an opportunity to waive the medical evaluation requirement of paragraph (a)(1) of this section provided that the hearing aid dispenser:

    (i) Informs the prospective user that the exercise of the waiver is not in the user's best health interest;

    (ii) Does not in any way actively encourage the prospective user to waive such a medical evaluation; and

    (iii) Affords the prospective user the opportunity to sign the following statement:

    I have been advised by ____ ____ (Hearing aid dispenser's name) that the Food and Drug Administration has determined that my best health interest would be served if I had a medical evaluation by a licensed physician (preferably a physician who specializes in diseases of the ear) before purchasing a hearing aid. I do not wish a medical evaluation before purchasing a hearing aid.

21 C.F.R. § 801.421(a) (emphasis added). This regulation restricts the sale of a hearing aid to an individual who has undergone a medical evaluation in the past six months, but allows a fully informed adult to waive the evaluation. According to the FDA, a waiver opportunity is necessary to protect the freedom of those who have religious or personal beliefs against a medical examination and for those situations where an individual may have difficulty

obtaining a medical evaluation. *See* 42 Fed.Reg. 9286, 9292–93 (Feb. 15, 1977).

**b. Pertinent provisions in the state regulations**

The Texas Hearing Aid Statute contains the following pertinent provisions:

(a) Compliance with other state and federal regulations.

(1) A licensee or permit holder shall adhere to the Federal Food and Drug Administration regulations in accordance with 21 Code of Federal Regulations (CFR) § 801.420 and § 801.421.

(2) A *licensee or permit holder* shall receive a written statement before selling a hearing instrument that is signed by a *physician or surgeon duly licensed by the Texas Medical Board who specializes in diseases of the ear.* The written statement shall confirm that the client's hearing loss has been medically evaluated during the preceding six-month period and that the client is age 18 or older. The licensee may inform the client that the medical evaluation requirement may be waived as long as the licensee:

(A) informs the client that the exercise of the waiver is not in the client's best health interest;

(B) does not encourage the client to waive the medical evaluation; and

(C) gives the client an opportunity to sign a statement on the contract that says: "I have been advised by (licensee's or permit holder's name) that the Food and Drug Administration has determined that my best health interest would be served if I had a medical evaluation by a licensed physician (preferably a physician or surgeon who specializes in diseases of the ear) before purchasing one or more hearing instruments. I do not wish to receive a medical evaluation before purchasing a hearing instrument."

22 TEX. ADMIN. CODE § 141.16 (emphasis added).

\* \* \*

(4) "Fitting and dispensing hearing instruments" means the measurement of human hearing by the use of an audiometer or other means to make selections, adaptations, or sales of hearing instruments. The term includes the making of impressions for earmolds to be used as a part of the hearing instruments and any necessary postfitting counseling for the purpose of fitting and dispensing hearing instruments.

TEX. OCC. CODE § 402.001(4).

\* \* \*

A person may not represent that the person is authorized to fit and dispense hearing instruments, or use in connection with the person's name any designation tending to imply that the person is authorized to engage in the fitting and dispensing of hearing instruments, unless the person holds a license or is otherwise authorized to do so under this chapter.

*Id.* at § 402.201.

**c. Analysis of the alleged differences between the federal and state regulations**

Defendants contend the Texas Hearing Aid Statute has the following requirements that are "different from, or in addition to" federal requirements:

● The Texas Hearing Aid Statute requires that "a licensee or permit holder shall receive a written statement before selling a hearing instrument that is signed by a *physician or surgeon duly licensed by the Texas Medical Board who specializes in diseases of the ear.* The written statement shall confirm that the client's hearing

loss has been medically evaluated during the preceding six-month period and that the client is age 18 or older." TEX. ADMIN. CODE § 141.16. By contrast, the FDA provides a "hearing aid dispenser shall not sell a hearing aid unless the prospective user has presented to the hearing aid dispenser a written statement signed by *a licensed physician* that states that the patient's hearing loss has been medically evaluated and the patient may be considered a candidate for a hearing aid. The medical evaluation must have taken place with the preceding 6 months. 21 C.F.R. § 801.421.

• The Texas Hearing Aid Statute requires that a *licensed* "fitter and dispenser" may inform the client that the medical evaluation may be waived. 22 TEX. ADMIN. CODE § 141.2(14). By contrast, the FDA allows a hearing aid dispenser to afford the prospective user an opportunity to waive the medical evaluation requirement. 21 C.F.R. § 801.420(3).

• The Texas Hearing Aid Statute not only requires licensure of hearing instrument fitters and dispensers, but it also defines "fitting and dispensing hearing instruments" as "the measurement of human hearing by the use of an audiometer, or by any means, for the purpose of making selections, adaptions, or sales of hearing instruments...." 22 TEX. ADMIN. CODE § 141.2(14). As a condition of sale, the Texas Hearing Aid Statute provides a licensee or permit holder shall advise clients who appear to have certain otologic conditions (i.e., visible deformity of the ear, pain or discomfort in the ear) to consult promptly with a physician. 22 TEX. ADMIN. CODE § 141.16(a)(4). According to Defendants, the required "fitting services" required by licensure put back in a

non-waivable audiological evaluation. By contrast, the FDA does not require an audiological evaluation ("fitting services").

In response to the express presumption provision, Plaintiffs first rely on 21 C.F.R. § 808.1(d)(2) (which exempts from preemption state laws that are "substantially identical"), arguing Congress has expressly reserved a state's right to regulate portions of the hearing aid device industry, and the Texas regulations are substantially identical to the federal regulations. Plaintiffs also rely on 21 C.F.R. § 808.1(d)(3), arguing the licensing and regulation of hearing aid device fitters and dispensers have been excluded from preemption and have been explicitly reserved to the States. As noted above, § 808.1(d)(3) provides, in pertinent part, as follows:

> Section 521(a) does not preempt State or local permits, licensing, registration, certification, or other requirements relating to the approval or sanction of the practice of medicine, dentistry, optometry, pharmacy, nursing, podiatry, or any other of the healing arts or allied medical sciences or related professions or occupations that administer, dispense, or sell devices. However, regulations issued under section 520(e) or (g) of the act may impose restrictions on the sale, distribution, or use of a device beyond those prescribed in State or local requirements. If there is a conflict between such restrictions and State or local requirements, the Federal regulations shall prevail.

21 C.F.R. § 808.1(d)(3).

According to Defendants, § 808.1(d)(3) exempts from preemption state licensing requirements for medical professions, and Defendants are neither medical professionals nor "fitters and dispensers" as that term is defined under Texas law. Accord-

ing to Defendants, in order to "fit and dispense" one must measure human hearing by the use of an audiometer, and Defendants do not use audiometers. According to Plaintiffs, Defendants are measuring human hearing by other means (i.e., by displaying device selection charts in their retail stores) and are representing they are licensed to engaged in the practice of "fitting and dispensing" hearing aid devices within Texas when they are not authorized to do so. Defendants contend they are dispensers, as defined by the MDA, who sell hearing aids directly to consumers without any type of audiological evaluation and/or fitting services. *See* 21 C.F.R. § 801.420(3). According to Defendants, the FDA did not include hearing aid dispensers in the list of "medical occupations" subject to the licensure exemption because the FDA has specifically set forth the conditions for the sale of a hearing aid by a hearing aid dispenser in 21 C.F.R. § 801.421. Thus, Defendants assert any additional state requirements applicable to hearing aid dispensers are preempted.

Whether or not the above section applies to the issue before the Court, § 808.1(d)(3) expressly provides the federal regulations shall prevail in the event there is a conflict between such regulations and state requirements. As argued by Defendants, licensure is only exempted from preemption to the extent it does not impose requirements applicable to a device different

from, or in addition to specific FDA requirements. Therefore, the issue remains whether the Texas statute imposes additional requirements applicable to a device in conflict with the federal statute as urged by Defendants or whether the statutes are substantially identical as urged by Plaintiffs.[2]

■ In 2007, the State of Texas, through the Office of the Attorney General, issued an opinion on a former version of the Texas Hearing Aid Statute that expressly included an audiological evaluation requirement and that did not include a waiver. *See* Tex. Att'y. Gen. Opinion No. GA–0525 (2007).[3] The Texas Attorney General, Gregg Abbott, considered whether Texas could lawfully require out-of-state entities to obtain licenses in order to sell hearing aids though the mail to Texas residents. *See* AG Opinion No. GA–0525 at pgs. 4–5. The AG noted the former Texas statute defined "fitting and dispensing hearing instruments" in relevant part to mean the "measurement of human hearing by the use of an audiometer or other means to make selections, adaptations, or sales of hearing instruments." *Id.* at pg. 1. According to the AG, *through this definition and the statutory requirements that a person dispensing or fitting be a license holder,* "there is a requirement that a person licensed under Texas law perform an

---

**2.** Twenty-one C.F.R. § 808.1(d)(2), the other exemption relied upon by Plaintiffs, provides an exemption from preemption for State or local requirements applicable to a device that are "equal to, or substantially identical to," federal requirements.

**3.** Defendants request the Court take judicial notice of the AG's 2007 Opinion. The Court may take judicial notice of the AG's 2007 Opinion on its own initiative or on a party's request. *See* Fed. R. Evid. 201(c). Attorney general opinions are not binding but are entitled to great weight by the court. *See Gaynor*

*Const. Co. v. Board of Trustees, Ector Cty. Indep. Sch. Dist.,* 233 S.W.2d 472, 477–78 (Tex.Civ.App.–El Paso, 1950). The Fifth Circuit has taken judicial notice of formal opinions of the Texas Attorney General. *See, e.g., KVUE, Inc. v. Moore,* 109 F.2d 922, 929 (5th Cir.1983) ("The Attorney General of Texas has since released a formal opinion clarifying the statute. We take judicial notice of this opinion and consider the effect, if any, of the Attorney General's opinion on KVUE's standing without remanding the case for the district court's views.").

audiological exam on a person who has ordered a hearing aid by mail." *Id.* at pg. 2 (emphasis added). Thus, at issue in the request were both the requirement of an audiological examination (that was not optional) and the prohibition against hearing aids ordered by mail. *Id.*

Because the former version of the Texas Hearing Aid Statute did not permit a waiver of the audiological evaluation requirement in the manner that federal law permits, the Attorney General concluded that the subsection of the former Texas law, that prohibited the "fitting and dispensing of hearing instruments by anyone without a license" (402.451(a)(6)), imposed requirements that were "different from and in addition" to the federal requirements and was also related to the effectiveness and safety of a hearing aid device. *Id.* at pg. 2–3. Therefore, according to the Attorney General, the subsection was expressly preempted by § 360k(a). *Id.* at pg. 3.

The 2007 AG opinion is consistent with prior decisions from federal courts. In a case involving both sales through the mail and the internet, the Eighth Circuit Court of Appeals held that federal law preempted a Missouri statute which provided that: "[n]o person shall ... sell through the mails, hearing instruments without prior fitting and testing by a hearing instrument specialist." *Mo. Bd. of Exam'rs for Hearing Instrument Specialists v. Hearing Help Express, Inc.,* 447 F.3d 1033, 1034–36 (8th Cir.2006). The Missouri statute at issue contained no option for a customer to submit a waiver in lieu of an auditory examination. The court found that requiring an auditory exam, where it is optional under the federal regulations, imposed a requirement that is "in addition to" the federal requirement applicable to the sale of hearing aids. *Id.* at 1036.

Similarly, the First Circuit Court of Appeals has held that federal law preempts a Massachusetts statute that required consumers to obtain a "hearing test evaluation" by a physician or audiologist and limited consumers' rights to waive the evaluation only to those situations where a consumer's religious beliefs precluded physician consultation. *Massachusetts v. Hayes,* 691 F.2d 57, 59–61 (1st Cir.1982). The First Circuit affirmed the FDA's determination that Massachusetts unlawfully attempted to impose requirements different from and in addition to federal requirements, and therefore the statute was preempted. *Id.* The court opined that "in the case of non-dangerous devices such as hearing aids it is eminently reasonable and consistent with over-riding public health goals to consider cost and availability when weighing the desirability of additional regulation" and that merely having a more stringent regulation than the federal regulation was not sufficient for an exemption from preemption." *Id.* at 61.

Plaintiffs point out the 2007 AG opinion addresses a former version of the Texas statute. According to Plaintiffs, the AG opinion and the above cases relied upon by Defendants are not applicable because the current version of the Texas Hearing Aid Statute contains a waiver provision substantially identical to the one provided in the federal statutes and does not contain an audiological evaluation requirement as in the former statute. Although the Texas statute has since been amended to provide waiver of medical exams for adult clients who purchase hearing aid devices, Defendants insist the fundamental reasons underlying the AG's opinion remain the same. Importantly, Defendants contend the audiological evaluation is not to be confused with the separate medical evaluation required under the Texas regulations pursuant to 22 TEX. ADMIN. CODE § 141.16 and the federal regulations under 21 C.F.R. § 801.421.

■ Defendants argue the FDA does not require an audiological evaluation and Texas still does despite the medical evaluation waiver provision, as will be discussed in detail below. As support for this argument, Defendants assert the FDA has determined that "[t]he primary risk to health presented by hearing aids is the possibility that an unnecessary or only partially effective hearing aid will be substituted for necessary medical or surgical treatment.... *Medical evaluation* by a licensed physician will ensure that all medically treatable conditions are accurately identified and properly treated before a hearing aid is bought." According to Defendants, the FDA has separately concluded "that *audiological evaluation* is not necessary to provide reasonable assurance of the safety or effectiveness of hearing aids." 45 Fed.Reg. 67329 (1980). *Id.* Given this, the FDA seems to have contemplated both audiological evaluations and medical evaluations as conditions of sale and concluded that only medical evaluations were necessary (and waivable for adults). According to Defendants, the FDA determined mandatory audiological evaluations as a condition of sale would only "increase the cost of a hearing aid and create an additional barrier to the receipt of a hearing aid in those areas of the country where audiological services are scarce." *Id.* at pg. 67330. The MDA does not require "fitting and dispensing" services or a separate audiological evaluation. *See* 21 C.F.R. § 801.421.

The Court now determines whether, as urged by Defendants, the current Texas regulations require a mandatory, non-waivable audiological evaluation, distinct from the waivable adult medical evaluation. Although an audiological evaluation is not expressly required in the Texas Hearing Aid Statute, Defendants focus on the statute's definition of "fitting and dispensing hearing instruments" as "the

measurement of human hearing by the use of an audiometer, or by any means, for the purpose of making selections, adaptions, or sales of hearing instruments...." 22 TEX. ADMIN. CODE § 141.2(14). Defendants assert this definition, combined with the Texas "fitting and dispensing" licensure requirement, require—in direct conflict with federal law—that a person licensed under Texas law perform an audiological exam on an adult customer before that customer may purchase a hearing aid.

According to the 2007 AG opinion, through this definition (which has not changed from the former statute at issue) and the statutory requirements of subsection 402.451(a)(6)(regarding licensure), there was a requirement that a person licensed under Texas law perform an audiological exam. Despite Texas' addition of a medical evaluation waiver provision applicable to adults, Defendants assert the required "fitting services" required by licensure keep in the current statute a non-waivable audiological evaluation. The Court agrees and finds the current Texas licensure requirement that a "fitter and dispenser" perform a pre-sale non-waivable "audiological evaluation" is an additional requirement applicable to a device in direct conflict with the MDA. For this reason, the Texas licensure provisions are expressly preempted by the MDA if they relate to the safety or effectiveness of hearing aids (which is discussed in the second prong of the preemption analysis below).

■ Another difference highlighted by Defendants concerns the medical evaluation provision contained in the current Texas statute. According to Defendants, while both the Texas and federal regulations require a medical evaluation (unless it is waived by an adult), they are not substantially identical because the Texas

regulations require the medical evaluation to be signed by a specialist in otology or otolaryngology (branches of medicine dealing specifically with the ear):

A licensee or permit holder shall receive a written statement before selling a hearing instrument that is signed by a *physician or surgeon duly licensed by the Texas Medical Board who specializes in diseases of the ear.* The written statement shall confirm that the client's hearing loss has been medically evaluated during the preceding six-month period and that the client is age 18 or older.

TEX. ADMIN. CODE § 141.16(a)(2) (emphasis added). By contrast, the federal regulations do not require a consumer to seek out a specialist licensed by the Texas Medical Board. Instead, a consumer can provide a written statement signed by his/her physician:

... a hearing aid dispenser shall not sell a hearing aid unless the prospective user has presented to the hearing aid dispenser a written statement signed by a *licensed physician* that states that the patient's hearing loss has been medically evaluated and the patient may be considered a candidate for a hearing aid.

*See* 21 C.F.R. § 801.421(a)(1) (emphasis added). As noted by Defendants, the FDA has concluded that examination by an otolaryngologist "may be a barrier to the receipt of a hearing aid in areas where otolaryngologists are not readily available." *See* 45 Fed.Reg. 199 (Oct. 10, 1980) at pg. 67329. The Court agrees with Defendants that the Texas regulations impose an additional requirement applicable to hearing aids that are different from and in addition to federal requirements.

█ Finally, the Court considers whether the Texas medical evaluation waiver provisions are in line with the federal regulations. According to Defendants, the Texas provisions are only appli-cable to licensed "fitters and dispensers," which necessarily mandates the purchase of fitting services (i.e., the non-waivable audiological evaluation in addition to the medical evaluation) for the prospective purchaser of the hearing aid. Defendants assert this material difference is illustrated by the replacement of the term "hearing aid dispenser" under the federal regulations with the term "licensee or permit holder" under the Texas regulations:

(1) A *licensee or permit holder* shall adhere to the Federal Food and Drug Administration regulations in accordance with 21 Code of Federal Regulations (CFR) § 801.420 and § 801.421.

(2) A *licensee or permit holder* shall receive a written statement before selling a hearing instrument that is signed by a physician or surgeon duly licensed by the Texas Medical Board who specializes in diseases of the ear. The written statement shall confirm that the client's hearing loss has been medically evaluated during the preceding six-month period and that the client is age 18 or older. The *licensee* may inform the client that the medical evaluation requirement may be waived....

TEX. ADMIN. CODE § 141.2(16)(a)(1)–(2). "Licensee or permit holder" is defined as "[a]ny person licensed or permitted by the committee." TEX. ADMIN. CODE § 141.2(18), and "license" is defined as a "license or permit issued by the committee under the Texas Occupations Code, Chapter 402, and this chapter to a person authorized to *fit and dispense* hearing instruments." TEX. ADMIN. CODE § 141.2(17) (emphasis added). Again, "fitting and dispensing" is defined as follows:

the measurement of human hearing by the use of an audiometer or other means to make selections, adaptations, or sales of hearing instruments. The term includes the making of impressions for

earmolds to be used as a part of the hearing instruments and any necessary postfitting counseling for the purpose of fitting and dispensing hearing instruments. TEX. OCC. CODE § 402.001(4). By contrast, the federal regulations do not require customers to pay for "fitting and dispensing" as a condition of a hearing aid sale but rather allow a hearing aid dispenser to afford the adult prospective user an opportunity to waive the medical evaluation requirement. Under the federal regulations, "dispenser" is defined as "any person, partnership, corporation, or association engaged in the sale, lease, or rental of hearing aids to any member of the consuming public . . ." and does not require any additional measuring, making impressions for earmolds, or post-fitting counseling prior to the sale of a hearing aid. For this additional reason, the Court finds the Texas regulations are not substantially identical to the federal regulations because they impose requirements applicable to a medical device that are different from and in addition to the federal requirements. The Court now considers the second prong of the preemption analysis.

2. **Whether the Texas Hearing Aid Statute's "fitting and dispensing" and licensure requirements relate to the safety and effectiveness of hearing aids**

· The second prong of the preemption analysis requires consideration of the safety and effectiveness of the device. See 21 U.S.C. § 360k(a)(2). The primary concern of the Texas Hearing Aid Statute, through its "fitting and dispensing" and licensure requirements, is regulating the safety and effectiveness of hearing aids. See AG Opinion No. GA–0525 at pg. 3. In his 2007 opinion, the Attorney General of Texas explained that the hearing examination requirement of "fitting and dispensing" services "clearly pertain[s] to the safety and effectiveness of a hearing aid." See id. Similarly, both the First and Eighth Circuits, in the above-cited cases, found the state fitting and dispensing requirements related to the safety and effectiveness of a hearing aid and were preempted. See Hearing Help Express, 447 F.3d at 1034; Hayes, 691 F.2d at 59–61.

██ Here, the Court similarly finds Texas' "fitting and dispensing" and corresponding licensure requirements relate to the safety and effectiveness of hearing aids because they are intended to ensure the purchaser is fitted properly with a safe and effective hearing aid. See, generally TEX. OCC. CODE §§ 402.451(a)(4), 402.201, 402.001(4), (6). Because it is different from and in addition to the federal requirements and relates to the safety and effectiveness of hearing aids, the Texas Hearing Aid Statute's "fitting and dispensing" and licensure requirements are expressly preempted. Express federal preemption of Plaintiffs' claims would render any pleading amendment futile, and the Court recommends Plaintiffs' claims that Defendants violated the Texas Hearing Aid Statute be dismissed with prejudice pursuant to Rule 12(b)(6). The Court now considers whether Plaintiffs' tortious interference and unjust enrichment claims should also be dismissed.

B. **Whether Plaintiffs' tortious interference and unjust enrichment claims should be dismissed**

1. **Tortious interference claim**

██ To succeed on a tortious interference claim, Plaintiffs must prove (1) there was a reasonable probability that Plaintiffs would have entered into a business relationship with a third person; (2) Defendants intentionally interfered with the relationship; (3) Defendants' conduct was

independently tortious or unlawful; (4) the interference proximately caused Plaintiffs' injury; and (5) Plaintiffs suffered actual damage or loss. *See Plotkin v. Joekel,* 304 S.W.3d 455, 487 (Tex.App.–Houston [1st Dist.] 2009, pet.denied).

Paragraph 28 of Plaintiffs' Amended Complaint provides as follows:

> In the present matter, the putative class members will assert claims for tortious interference with prospective relations and unjust enrichment. The common issues that affect all class members include, but are not limited to, whether Defendants sold hearing aid devices without the proper licensing, and whether Defendants were unjustly enriched....

*See* Am. Compl., ¶ 28. Specifically regarding their tortious interference claim, Plaintiffs allege Defendants intentionally interfered with the formation of the relationship between Plaintiffs and third parties because Defendants desired to bring about the interference or knew the interference was certain or substantially certain to occur as a result of the conduct. Am. Compl., ¶ 32. According to Plaintiffs, Defendants knew they were required under the laws of the State of Texas to become licensed in order to dispense hearing instruments throughout their stores located in Texas, yet, unlike all Plaintiffs, Defendants failed to take all necessary steps to ensure their ability to do so. *Id.* Additionally, Plaintiffs allege "Defendants violated the applicable statute when it failed to get the proper licensure by the State in order to dispense hearing aid devices." *Id.* at ¶ 33.

According to Defendants, Plaintiffs' claims for tortious interference and unjust enrichment are both based on allegations that Defendants are fitting and dispensing hearing aids in Texas without the required licensure, and any allegation that Defen-

dants violated the Texas Hearing Aid Statute cannot form the basis of said state law claims because the federal regulations expressly preempt the state statute. Defendants further assert Plaintiffs fail to allege facts in support of the remaining elements of their tortious interference claim as required under *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955. Specifically, Defendants contend Plaintiffs do not provide any factual support for their claim that there was a reasonable probability that they would have entered into a business relationship with Defendants' purchasers of hearing aid devices. Nor do Plaintiffs allege that such purchasers would have even purchased hearing aid devices had they not been available at Defendants' stores. Defendants further assert Plaintiffs do not allege that any negotiations or even basic contact occurred with any such purchasers. *See Richardson–Eagle, Inc. v. William M. Mercer, Inc.,* 213 S.W.3d 469, 475 (Tex. App.–Houston [1st Dist.] 2006, pet.denied). According to Defendants, Plaintiffs merely surmise that Defendants "are competing with Plaintiffs." Am. Compl., ¶ 34.

In their Amended Complaint, Plaintiffs not only allege violations of the Texas Hearing Aid Statute, which the Court has found are preempted, but they also allege that Defendants are not licensed to sell, lease, or rent hearing aids to any member of the consuming public under federal law, "according to the Federal Food and Drug Administration, per Title 21, Volume 8, Chapter 1, Part 801, Subpart H of the Code of Federal Regulations, §§ 801.420(3) and (5)." *Id.* at ¶ 21. According to Defendants, § 801.420(3) defines "dispenser" as "any person, partnership, corporation, or association engaged in the sale, lease, or rental of hearing aids to any member of the consuming public or any employee, agent, sales person, and/or representative of such a person, partner-

ship, corporation, or association." Section 801.420(5) defines "sale" or "purchase" to include "any lease or rental of a hearing aid to a member of the consuming public who is a user or prospective user of a hearing aid." Defendants assert neither subsection refers or relates to any federal licensing requirement, and it is impossible to determine from Plaintiffs' cursory allegations which requirement Plaintiffs are alleging Defendants violated.

■■■■ A state law claim which alleges failure to comply with FDA regulations, to the extent the claim merely imposes parallel requirements and does not impose requirements different from, or in addition to the federal requirements, is not subject to preemption. *See Lohr*, 518 U.S. at 495–97, 116 S.Ct. 2240. "Section 360k does not preclude States from imposing different or additional *remedies,* but only different or additional *requirements." Id.* at 513, 116 S.Ct. 2240 (O'Connor, J., concurring in part and dissenting in part) (emphasis in original). State law claims which make a party liable for damages for failure to comply with federal law are not preempted. *In re Medtronic, Inc., Implantable Defibrillators Litig.,* 465 F.Supp.2d 886 (D.Minn.2006). Thus, Plaintiffs' tortious interference claim, to the extent it is based on Defendants' alleged failure to comply with federal law, is not preempted.

However, the Court agrees with Defendants that Plaintiffs' one-sentence allegation regarding Defendants' alleged violations of federal law does not provide Defendants sufficient information to determine which federal requirements Plaintiffs are asserting Defendants failed to comply. Therefore, the Court recommends Plaintiffs be ordered to amend their complaint with more detail as to the federal regulations allegedly violated by Defendants. The Court recommends Defendants' motion to dismiss Plaintiffs'

tortious interference claim be denied at this time.

### 2. Unjust enrichment based on fraud

■■■■ In their unjust enrichment claim, Plaintiffs allege, among other things, "Defendants have been unjustly enriched by dispensing hearing instruments without authorization to do so in violation of the law." Am. Compl., ¶ 37. A party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of undue advantage. *See Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39,41 (Tex.1992). To satisfy this standard, the plaintiff should expect to establish a separate claim either for fraud, duress, or taking advantage. *See Breckenridge Enters. v. Avio Alternatives, LLC,* 2009 WL 1469808 at *10 (N.D.Tex.2009). Rule 9(b) states that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." FED. R. CIV. P. 9(b).

■■■■ According to Defendants, Plaintiffs have failed to plead any facts to show that Defendants' conduct or behavior constitutes fraud, duress, or the taking of undue advantage, and Plaintiffs' sole allegation that Defendants' "wrongfully procured" its hearing aid customers and/or dispensed hearing aids in violation of the law cannot meet this fraud standard. Defendants request Plaintiffs' unjust enrichment claim be dismissed without an opportunity to amend.

Although Plaintiffs' complaint asserts an unjust enrichment based on fraud claim, Plaintiffs fail to plead the underlying fraud claim with particularity as required by Rule 9(b). Therefore, the Court recommends Plaintiffs be ordered to replead their fraud claim with particularity as required by Rule 9(b), and recommends Defendants' motion to dismiss Plaintiffs' un-

just enrichment claim based on fraud be denied at this time. Based on the foregoing, it is

**RECOMMENDED** that Defendants' Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Docket Entry # 14) be **GRANTED IN PART and DENIED IN PART.** The Court recommends Plaintiffs' claims that Defendants violated the Texas Hearing Aid Statute be dismissed with prejudice. The Court further recommends Plaintiffs be ordered to amend their complaint with more details as to their tortious interference and unjust enrichment based on fraud claims.

Within fourteen (14) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A. 636(b)(1)(C). Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn,* 474 U.S. 140, 148, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir.1988).

**SIGNED this 13th day of June, 2014.**